UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES ANDREWS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Cause No.  1:09-cv-01242-WTL-JMS |
| | ) |
| SPEEDWAY SUPERAMERICA LLC | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF CHARLES ANDREWS' BRIEF IN SUPPORT OF CROSS MOTION
FOR JUDGMENT ON THE PLEADINGS AND IN RESPONSE TO DEFENDANT
SPEEDWAY SUPERAMERICA LLC'S MOTION FOR JUDGMENT ON THE
PLEADINGS**

Plaintiff Charles Andrews ("Mr. Andrews" or "Plaintiff") submits this Brief in

Support of Cross Motion for Judgment on the Pleadings and in Response to Defendant

Speedway SuperAmerica LLC's ("Speedway") Motion/Brief for Judgment on the

Pleadings ("Motion").

## I. INTRODUCTION

On February 13, 2008, Mr. Andrews tried his luck with the Hoosier Lotto.  As he

had done so many times before, Mr. Andrews walked into a Speedway with a properly

filled out play slip and gave it to the Speedway clerk to run the numbers.  As fate would

have it that night, he had picked a winner.  The only problem is, Speedway refused to

play Mr. Andrews' Slip.  Speedway's refusal to act cost Mr. Andrews in excess of Eleven

and a Half Million Dollars ($11,500,000.00).  This Court will decide whether Speedway

can avoid responsibility.

## II.  FACTUAL BACKGROUND

**A.  Speedway's Contract with the Lottery Commission**

On or about December 8, 2006, Speedway entered into a contract with the State

Lottery Commission of Indiana ("Lottery Commission"), which authorized Speedway to

sell Indiana lottery tickets from its company owned and operated gasoline and

convenience stores located throughout Indiana, including the one located at 56th Street

and High School Road in Indianapolis, Indiana.  A copy of the Retailer Contract for The

Sale of Lottery Tickets signed by Speedway to sell Indiana lottery tickets (the "Lottery

Contract" or "Contract") is attached to Mr. Andrews' Amended Complaint as Exhibit A.

The Contract incorporates all of the provisions of Indiana Code 4-30, as well as

all rules promulgated by the Lottery and published at 65 I.A.C. 1-1-1, *et seq*. *See* Am.

Complaint, Exhibit A, p. 1.  Pertinent parts of two such rules are set out below:

> (b) Purchase of on-line tickets is made at the player's own risk through the
> on-line retailer who is acting on behalf of the player in entering
> information for producing the on-line tickets.

65 IAC 5-2-7 (2007).

> Sec. 5. (a) An on-line ticket for Hoosier Lotto may represent one (1) or
> more plays.  An on-line ticket for Hoosier Lotto shall be purchased by any
> of the following methods:  (1) The player may submit a hand completed
> play slip identifying the selected payment option and one (1) or more
> plays to an authorized on-line retailer who ***shall*** generate the on-line
> ticket.

65 IAC 5-10-5 (2007) (emphasis added).[1]

---

[1]Speedway cites cases from other jurisdictions involving other state lottery regulations.  However, Speedway has failed to cite a single case from any other jurisdiction that has any regulation like 65 IAC 5-10-5.

The Contract also states, "Retailer shall instruct its employees concerning the Governing Laws." Am. Complaint, Exhibit A, p. 1.  The Contract also provides that Speedway shall "conspicuously display . . . the official statement of the estimated odds of winning a prize, and such point-of sale materials, game end date lists and other game related information provided by the Lottery." *Id.* at 3.  The Contract further provides that Speedway must "exercise ultimate control and supervision over its employees selling lottery tickets and be fully responsible and liable therefor." *Id.* at 4.  Additionally, the Contract provides that the Retailer (here, Speedway) "agrees to and shall . . . sell tickets for all draw games established by the Lottery . . . and only accept play slips issued by the Lottery and marked by hand in pencil or blue or black ink." *Id.* at 5-6.  Finally, the Contract provides that the Lottery may terminate the Contract for reasons which include, but are not limited to, the following: "a. Retailer violated any term or condition of this Contract, the Governing Laws, or any directive or instruction issued by the Director of the Lottery; . . . n. Retailer committed any fraud, deceit or misrepresentation to the Lottery, any individual purchasing a lottery ticket from Retailer, or otherwise; . . . u. Retailer knowingly failed to enter a play in a draw game into the Lottery's central computer system pursuant to the request of a ticket purchaser." *Id.* at 7-8.

**B. Speedway Refused to Play Mr. Andrews' Numbers**

On Saturday, February 13, 2008, at approximately 10:30 p.m. Mr. Andrews entered the Speedway at 56th Street and High School Road with the purpose of purchasing his weekly Hoosier Lotto Ticket. Am. Complaint, ¶ 6.  He had filled out an authorized play slip by hand, using numbers from his birth date for one of the three sets of numbers he want to play. *Id.*  However, despite the aforementioned laws, rules and

3

contract provisions, the Speedway employee behind the counter refused to sell Mr. Andrews a Lotto ticket. *Id.*

All in the presence of store video cameras, first, the Speedway employee told Mr. Andrews that the lottery machine was broken. *Id.* This was a lie. To prove that the machine was not broken, Mr. Andrews had the Speedway employee print a list of winning numbers from the previous night. *Id.* The Speedway employee then advised Mr. Andrews that the manager of the store does not allow lottery tickets to be sold after 10:00 p.m. *Id.* The Speedway employee misrepresented this to Mr. Andrews knowing "citizens such as Plaintiff could purchase lottery tickets from 4:30 a.m. until 11:45 p.m., and 10:40 p.m. on Saturday nights with respect to Hoosier Lotto tickets." *Id.* at ¶ 13. Thereafter, Mr. Andrews spoke with the Manger who refused to put Mr. Andrews' play slip through the machine. *Id.* at ¶ 7. Realizing it was too late to go to another store, as the Lotto cut off is 10:40 p.m. on Saturday nights for that Saturday's Lotto drawing, Mr. Andrews left his play slip with the Manager and informed him that he would return the next day to make sure that his Lotto play slip had been run. *Id.*

On February 14, 2008, Mr. Andrews returned to the Speedway store to see if his Lotto play slip that he had left with the Manager contained the winning numbers. *Id.* at ¶ 8. In front of two other Speedway employees, the Manager grabbed the play slip from behind the counter and, in front of the video cameras, looked at Mr. Andrews' play slip and the list of winning numbers for the previous night's Lotto drawing. *Id.* Mr. Andrews had entered three sets of numbers on his hand written play slip, and the third set matched exactly the winning numbers for the prior night's drawing – 1, 9, 13, 16, 20 and 30, with

4

a grand prize of approximately Eleven Million Five Hundred Thousand Dollars ($11,500,000.00). *Id*.

## C. Procedural History

On September 1, 2009, Mr. Andrews filed a Complaint for Damages and Request for Jury Trial against Speedway in the Marion County Superior Court. On October 2, 2009, Speedway removed the matter to the United States District court Southern District of Indiana, Indianapolis Division. On November 2, 2009, Speedway filed its Answer. Thereafter, an initial pretrial conference was scheduled for December 15, 2009. At said Conference, the Court entered a four-brief briefing schedule.

On December 30, 2009, Mr. Andrews filed an Amended Complaint for Damages and Request for Jury Trial against Speedway alleging the following five (5) claims: (1) Breach of Contract; (2) Fraud; (3) Breach of Fiduciary Duty; (4) Negligence; and (5) Intentional Interference with Prospective Business or Economic Advantage. On January 12, 2010, Speedway filed its Answer. On January 29, 2010, in accordance with the amended briefing schedule, Speedway filed its Motion and Brief in support of said Motion.

## III. JUDGMENT ON THE PLEADINGS STANDARD

Rule 12(c) allows a party to move for judgment after the complaint and answer have been filed by the parties. *See* Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed using the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). In other words, the facts in the complaint are viewed in the light most favorable to the nonmoving party and a court will grant the motion "only

5

if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* All reasonable inferences are drawn in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). The complaint is required to have only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required. *Pisciotta*, 499 F.3d at 633. However, the complaint must provide the defendant with fair notice of what the claim is and the grounds upon which it rests. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. ARGUMENT

Speedway sets forth the following arguments in support of its Motion: (1) Mr. Andrews' Breach of Contract claim fails because lottery players, such as Mr. Andrews, are not third-party beneficiaries of contracts, like the retailer contract here, between state lotteries and lottery retailers; (2) Mr. Andrews' fraud claim fails because it is identical to his breach of contract claim; (3) Mr. Andrews' breach of fiduciary duty claim fails because a fiduciary duty cannot arise through an arm's length transaction and there is no Indiana regulation that imposes fiduciary duties on lottery retailers in favor of lottery players or provides said players with a private right of action; (4) Mr. Andrews' negligence claim fails for three reasons: a. Speedway had no duty to sell him a lottery ticket; b. Even if it did, Mr. Andrews does not have a private right of action against Speedway; and c. the economic loss rule bars his claim; and (5) Mr. Andrews' intentional interference with prospective business or economic advantage claim fails because Speedway's conduct was not "illegal" and without justification. Motion p.'s 1-3.

6

Mr. Andrews will address and dispose of each one of Speedway's arguments in turn.

## 1. Breach of Contract

Speedway first maintains that Mr. Andrews' Breach of Contract claim fails as a matter of law because he is not a third party beneficiary under the Lottery Contract. Motion, p. 7. Specifically, Speedway argues that "[n]othing in the Lottery Contract establishes that Speedway and the Lottery intended to benefit any third parties, including Andrews." *Id.* at 8. However, here, Mr. Andrews is a third-party beneficiary of the Lottery Contract because both Speedway and the Lottery clearly intended to benefit him; Speedway assumed a duty to Mr. Andrews through the express terms of the Lottery Contract and 65 IAC 5-2-7; and performance of the contract rendered a direct benefit intended for Mr. Andrews.

Generally, only parties to a contract or those in privity with them maintain a right to recover under a contract. *Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001). However, those not directly party to a contract may enforce the contract if they demonstrate that they are third-party beneficiaries. *Id.* To demonstrate third-party beneficiary status, a claimant must establish the following:

(1) A clear intent by the actual parties to the contract to benefit the third party, (2) A duty imposed on one of the contracting parties in favor of the third party, and (3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 955 (7th Cir. 2007) (citing *Luhnow*, 760 N.E.2d at 628). "The intent to benefit the third party is the

7

controlling factor and may be shown by specifically naming the third party **or by other evidence**." *Luhnow*, 760 N.E.2d at 628 (emphasis added).

### A.  Speedway and the Lottery clearly intended to benefit players like Mr. Andrews

In order to demonstrate third-party beneficiary status, Mr. Andrews must first show that Speedway and/or the Lottery clearly intended to benefit him through their Contract. *Seiwert*, 497 F. Supp. 2d at 955 (citing *Luhnow*, 760 N.E.2d at 628). Although the Lottery Contract does not specifically name Mr. Andrews as a third-party beneficiary, "other evidence" clearly shows intent by the Lottery and Speedway to benefit Mr. Andrews. The first page of the Lottery Contract includes the following provision:

> This contract incorporates and Retailer agrees to comply with all provisions of Indiana Code 4-30, all rules heretofore promulgated by the Lottery and published *at 65 IAC 1-1-1, et seq.*, and such other rules as may hereafter be promulgated (collectively the "Governing Laws"). Retailer shall instruct its employees concerning the Governing Laws.

Am. Complaint, Exhibit A, p. 1 (emphasis added). In accordance with this provision, 65 IAC 5-2-7(b) provides in pertinent part:

> (b) Purchase of on-line tickets is made at the player's own risk through the on-line retailer *who is acting on behalf of the player* in entering information for producing the on-line tickets. It is solely the player's responsibility to verify the accuracy of on-line game information and all other data printed on the on-line ticket. In the event of any error, and unless the rule for a specific on-line game provides otherwise, the player's only remedy is cancellation of the on-line ticket in accordance with section 10 of this rule. The commission, the director, and the commission's employees have no responsibility or liability for on-line tickets printed in error or for on-line tickets intentionally or inadvertently canceled by a retailer.

(Emphasis added). This rule is intended to benefit the Lottery, Speedway, and individuals, such as Mr. Andrews, in the following three ways: (1) It benefits the Lottery by way of limiting the Lottery's liability to players "for on-line tickets printed in error or

for on-line tickets intentionally or inadvertently canceled by a retailer;" (2) It benefits Speedway by placing responsibility on the individual players to "verify the accuracy of on-line game information and all other data printed on the on-line ticket;" and (3) It benefits individuals, such as Mr. Andrews, by creating an agency relationship with a resulting duty requiring the on-line retailer to act "on behalf of the player in entering information for producing the on-line tickets." 65 IAC 5-2-7(b).

Moreover, the Lottery Contract includes provisions that clearly show intent by the Lottery and Speedway to benefit lottery players, such as Mr. Andrews. For example, section "XI. TERMINATION AND DEACTIVATION" of the Contract states that the Lottery may terminate the Contract for reasons which include, but are not limited to, the following:

> n. Retailer committed any fraud, deceit or misrepresentation to the Lottery, *any individual purchasing a lottery ticket from Retailer*, or otherwise; . . . u. Retailer knowingly failed to enter a play in a draw game into the Lottery's central computer system *pursuant to the request of a ticket purchaser.*

Am. Complaint, Exhibit A, p. 7-8 (emphasis added). These two provisions provide the Lottery with the right to terminate the Contract if the Retailer engages in fraud, deceit or misrepresentation to "any individual purchasing a lottery ticket from Retailer," or if the Retailer knowingly fails to enter a play under certain circumstances "pursuant to the request of a ticket purchaser." The apparent intent behind these two provisions is two-fold. First, the provisions are intended to benefit the Lottery by giving them the right to terminate the Contract if the Retailer does not properly abide. Second, the provisions are intended to benefit the players, such as Mr. Andrews, to ensure that the Retailer does not engage in questionable or fraudulent activity at the player's expense. Thus, both the rules

9

governing the Lottery and specific provisions of the Contract clearly shows intent by the Lottery and Speedway to benefit individual players, such as Mr. Andrews.

Notwithstanding this, Speedway maintains that "[e]ven if the Court were to conclude that Speedway and the Lottery entered the Lottery Contract for the benefit of all lottery players, nothing establishes that Speedway's obligations under the Lottery Contract were particularized to Andrews." Motion, p. 9. In support of its claim, Speedway first relies on *Ayres v. Indian Heights Volunteer Fire Dept., Inc.*, 493 N.E.2d 1229 (Ind. 1986) for the proposition "that no third-party beneficiary status exists where a contract benefited a group of people as a whole." *Id.* In *Ayres*, the Indian Heights Volunteer Fire Department contracted with the Taylor Township Trustee to provide fire protection. *Ayres*, 493 N.E.2d at 1232. Thereafter, the Ayres sued the Fire Department for its alleged negligence in fighting a fire in which the Ayres lost their garage and its contents. *Id.* at 1231. As part of their suit, the Ayres argued that they were third-party beneficiaries of the contract between the trustee and the fire department "and thus should have specific rights to enforce the joint contractual agreement to prevent the spread of, as well as loss due to fire and to make all possible efforts to save property and lives." *Id.* at 1235. In rejecting this argument, the Supreme Court held:

> ***There is no showing here that the township assumed a special or private duty to a particular member of the public through the contractual third-party beneficiary theory.*** The contract entered into between the trustee and the fire department was for the benefit of the residents of Taylor Township as a whole. The obligation was not particularized as to any single resident of the township, including these plaintiffs.

*Id.* (emphasis added). *Ayres*, however, is distinguishable from the present case in one significant way. In the present case, unlike in *Ayres*, there is a clear showing that Speedway assumed a duty to act on behalf of Mr. Andrews. *See* 65 IAC 5-2-7(b)(stating

10

"Purchase of on-line tickets is made at the player's own risk through the on-line retailer *__who is acting on behalf of the player__* in entering information for producing the on-line tickets." (emphasis added)). Thus, in contrast to Ayres, here Speedway's obligations were particularized to Mr. Andrews.

Moreover, to the extent that Speedway argues that Mr. Andrews is not a third-party beneficiary merely because he is not named as such is a clear misreading of the law. The law *__does not__* require that a third-party beneficiary be named. *See Luhnow*, 760 N.E.2d at 628 (stating, "[t]he intent to benefit the third party is the controlling factor and may be shown by specifically naming the third party **or by other evidence**.")(emphasis added); *see also Real Estate Support Serv's. v. Nauman*, 644 N.E.2d 907, 911 (Ind. Ct. App. 1994); *Commercial Ins. Co. of Newark, New Jersey v. Pacific-Peru Constr. Corp.*, 558 F.2d 948 (9th Cir. 1977); *United States v. State Farm Mutual Automobile Ins. Co.*, 455 F.2d 789 (10th Cir. 1972). Rather, the naming of a third-party beneficiary is merely one of several ways in which the "intent" element may be satisfied.

Finally, Speedway relies on *Brown v. California State Lottery Comm'n*, 232 Cal. App. 3d 1335 (Cal. App. 1st Dist. 1991) and *Haynes v. Dept. of the Lottery*, 630 So. 2d 1177 (Fla. Ct. App. 1994), to support its contention that "nothing in 4-30-1, *et seq.* indicates that the purpose of the Indiana State Lottery is to benefit lottery players like Andrews." Motion, p. 11. Mr. Andrews does not dispute this contention. Rather, Mr. Andrews maintains that Title 65 of the Indiana Administrative Code, which governs the State Lottery Commission, and the Lottery Contract are replete with regulations and provisions clearly showing intent by the Lottery and its Retailers to benefit players like

Mr. Andrews. *See supra* 65 IAC 5-2-7, 5-10-5; *see also* Am. Complaint Exhibit A, p. 3-8.

Thus, notwithstanding the fact that the Lottery Contract does not specifically name Mr. Andrews as a third-party beneficiary, "other evidence" clearly shows intent by the Lottery and Speedway to benefit Mr. Andrews.

### B.  Speedway assumed a duty to Mr. Andrews through 65 IAC 5-2-7.

Next, in order to demonstrate third-party beneficiary status Mr. Andrews must show that Speedway assumed a duty to him. *Seiwert*, 497 F. Supp. 2d at 955 (citing *Luhnow*, 760 N.E.2d at 628).  The expressed language of 65 IAC 5-2-7 sets forth a duty by mandating that on-line retailers like Speedway act on behalf of players like Mr. Andrews. In Indiana, "[w]hen one person gives another person authority to act on his behalf, an agency relationship is created." *Reginald Martin Agency, Inc., v. Conseco Med. Ins. Co.*, 478 F. Supp. 2d 1076, 1088 (S.D. Ind. 2007) (quoting *Johnson v. Blankenship*, 679 N.E.2d 505, 507 (Ind. Ct. App. 1997) (emphasis added).

Here, the expressed language of 65 IAC 5-2-7(b) clearly provides Speedway with the authority to act on behalf of Mr. Andrews in entering information for producing his on-line ticket.   In accordance with this authority, Speedway assumed the specific duty to act on behalf of Mr. Andrews and enter his information to produce the on-line ticket.

### C.  Performance of the contract rendered a direct benefit intended for Mr. Andrews.

Finally, in order to establish third-party beneficiary status Mr. Andrews must show that performance of the contract rendered a direct benefit intended for him. *Seiwert*, 497 F. Supp. 2d at 955 (citing *Luhnow*, 760 N.E.2d at 628).  Here, the Lottery Contract sets forth the rules, regulations, and procedures for the sale of lottery tickets to

individual players, such as Mr. Andrews. As such, the only way that Mr. Andrews could obtain a direct benefit is through performance of the contract (Speedway's selling tickets in accordance with the Contract and rules to players like Mr. Andrews). Thus, it is clear that had Speedway properly performed under the Contract, Mr. Andrews would have been rendered a direct and intended benefit.

Therefore, because the three elements necessary for Mr. Andrews to obtain third-party beneficiary status are each present, Speedway's Motion regarding Count I must be denied and Mr. Andrews' Cross Motion should be granted.

## 2. Fraud

Next, Speedway maintains that Mr. Andrews' "fraud claim fails because it is nothing more than a repackaged version of his breach of contract claim. . . . [and] Andrews has not alleged any damage from Speedway's alleged misrepresentation independent of the damage he claims to have suffered as a result of Speedway's breach of contract." Motion, p. 11, 13. Mr. Andrews agrees with Speedway that he has not alleged any damage independent of the damages he has suffered as a result of Speedway's breach of contract. However, Plaintiff pled the Breach of Contract and Fraud claims as two independent and alternate claims for relief. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (stating, "Our ordinary rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.")(quoting, in part, Fed. Rule Civ. Proc. 8(e)(2).). As such, each claim should be examined independent of the other.

13

With regard to the Fraud claim, the elements of common law fraud are as follows:

(1) a material misrepresentation of past or existing facts; (2) which was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightly relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of.

*Doe v. Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000). Here, Mr. Andrews has satisfied these elements. Speedway misrepresented to Mr. Andrews "that citizens such as Plaintiff could purchase lottery tickets from 4:30 a.m. until 11:45 p.m., and 10:40 p.m. on Saturday nights with respect to Hoosier Lotto tickets." Am. Complaint, ¶ 13. Furthermore, Speedway misrepresented to Plaintiff that the Lottery machine was not working that night, and lied by telling him that they were not allowed to sell tickets after 10:00 p.m. *Id.* Speedway made all of these representations knowing them to be false or in reckless ignorance of its falsity, and said misrepresentations and lies proximately caused Mr. Andrews to sustain damages in excess of Eleven Million Five Hundred Thousand Dollars ($11,500,000.00).

Because Speedway engaged in these fraudulent acts, Speedway's Motion regarding Count II must be denied.

### 3. Breach of Fiduciary Duty

Next, Speedway argues that Mr. Andrews' breach of fiduciary duty claim fails for the following three reasons: (1) Speedway and Mr. Andrews were engaged in an "arm's length" transaction thereby precluding a fiduciary relationship; (2) 65 IAC 5-2-7 does not impose fiduciary duties on retailers; and (3) the lottery statutes and regulations do not provide Mr. Andrews with a private right of action. Mr. Andrews will address each of these arguments in turn.

### A.  Speedway and Mr. Andrews were not engaged in an "arm's length transaction

Speedway first contends that Mr. Andrews' breach of fiduciary duty claim fails because no special relationship existed between the parties to create a fiduciary duty. Specifically, Speedway maintains that the relationship is the result of an "arm's length" transaction.  However, in this case, as outlined above, Speedway and Mr. Andrews stood in an agency relationship thereby negating Speedway's claim that it was an arms length transaction.

Normally, equity will act to protect a relationship of trust and confidence between parties and to prevent the party owing the duty from profiting by its breach.  *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 388 F. Supp. 2d 919, 927 (S.D. Ind. 2005). "In Indiana, various legal and domestic relationships raise a presumption of confidence and trust as to the subordinate party on the one hand and a corresponding influence as to the dominant party on the other.  These relationships include, among others, principal and agent." *Id*. (citing *In re Estate of Wade*, 768 N.E.2d 957, 961 (Ind. Ct. App. 2002) (internal citations omitted)).  Additionally, Indiana courts have held that a fiduciary relationship exists when:

> (1) [C]onfidence is reposed by one party in another with resulting superiority and influence exercised by the other; (2) the party reposing the confidence is in a position of inequality, dependence, weakness, or lack of knowledge; and (3) the dominant party wrongfully abuses this confidence by improperly influencing the weaker so as to obtain an unconscionable advantage.

*Encore Hotel Owners II, L.L.C. v. Red Roof Inns, Inc.*, 2003 U.S. Dist. Lexis 23124, at *20 (S.D. Ind. Dec. 9, 2003).  Whether or not a confidential relationship exists is a

question of fact. *Reginald*, 388 F. Supp. 2d at 928. Likewise, the question of whether or not an agency relationship exists is generally a question of fact. *Id.*

Here, Speedway owed Mr. Andrews a fiduciary duty because a principal-agent relationship existed between the parties. As earlier indicated, "[w]hen one person gives another person authority ***to act on his behalf***, an agency relationship ***is*** created." *Reginald*, 478 F. Supp. 2d at 1088 (citing *Johnson*, 679 N.E.2d at 507.) (emphasis added). To set forth an agency relationship, three elements must be shown: "(1) a manifestation of consent by the principal to the agent, (2) an acceptance of the authority by the agent, and (3) control exerted by the principal over the agent." *Id.*

There is evidence to support each of the elements of an agency relationship. First, 65 IAC 5-2-7 mandates that on-line retailers (Speedway) "act on behalf of the player." Second, retailers like Speedway must accept the authority to act on a lottery player's behalf in order to participate in the lottery. Finally, individual lottery players have clear control over the on-line retailer in that once a player hands over a properly filled out play slip, the on-line retailer is required to generate the ticket. *See* 65 IAC 5-10-5(a). Given these facts, it is clear that Speedway and Mr. Andrews were ***not*** engaged in an arms length transaction.

### B. 65 IAC 5-2-7 imposes a fiduciary duty on on-line retailers like Speedway

Notwithstanding this, Speedway additionally maintains that "[n]either 65 I.A.C. 5-2-7 nor any other statute or regulation burdens Speedway with a fiduciary duty of loyalty to Andrews." Motion p. 15. Specifically, Speedway argues that the

> remaining language in 65 I.A.C. 5-2-7(b) confirms that the State Lottery Commission did not intend to impose fiduciary duties on retailers. . . . [because] [i]f the intent of 65 I.A.C. 5-2-7 were to impose a fiduciary duty upon lottery retailers in favor of lottery players, the regulation would not

16

in the next sentence impose sole responsibility on the player to verify the
accuracy of the on-line game information.

*Id.* at 15-16.  This argument, though, is unpersuasive because 65 IAC 5-2-7 clearly states

that the on-line retailer (Speedway) acts "***on behalf of the player*** in entering information

for producing the on-online tickets[,]" and the remaining language ***does not*** specify any

other intent.  (Emphasis added).  In other words, the remaining language of 65 IAC 5-2-

7(b), which places sole responsibility on the player to verify the accuracy of the on-line

information, has no bearing whatsoever on the language preceding it.  It is a separate and

distinct sentence, which is independent of the preceding sentence.  The responsibility of

the on-line retailer (Speedway) to act on behalf of the player (Mr. Andrews) in entering

information is an independent clause, which clearly places a duty on the retailer to act on

a player's behalf in entering information for the ticket.  The "next sentence" merely

imposes a separate and distinct responsibility on the player to verify the accuracy of the

on-line information.  There is nothing in the "next sentence" that even remotely suggests

what Speedway is claiming.

Lastly, Speedway argues that even if 65 IAC 5-2-7 creates a fiduciary duty in

favor of lottery players, "it does not impose a duty of loyalty on Speedway to permit him

to purchase a lottery ticket in any and all circumstances, as Andrews claims."  Motion p.

16.  Mr. Andrews, though, is not claiming that a duty is imposed on Speedway "in any

and all circumstances."  Rather, Mr. Andrews maintains that a duty is owed here because

Speedway refused to enter his play slip after it was properly and accurately filled out, and

when he appeared in the store at 10:30 p.m. well before the 10:40 p.m. cutoff for the

Hoosier Lotto.  The task of entering the information from a player's on-line ticket is

specifically contemplated by the clear expressed language of 65 IAC 5-2-7(b).  In other

words, the duty Mr. Andrews seeks is the precise duty contemplated under the statute. Thus, Speedway's claim that Mr. Andrews is seeking a broader duty than is considered under 65 IAC 5-2-7 is not factually accurate.

### C.  65 IAC 5-2-7 specifically mandates a duty of care

Next, Speedway argues that "because the lottery statutes and regulations do not provide Andrews a private right of action against Speedway, his breach of fiduciary duty claim fails as a matter of law." *Id*. at 17.  In support of this argument, Speedway cites to and discusses *Merrill v. Trump Indiana, Inc.*, 320 F.3d 729, 732 (7th Cir. 2003).

*Merrill* involved a compulsive gambler who claimed that an Indiana gambling statute and regulation imposed a duty on Trump Indiana to exclude gamblers who asked to be placed on the casino's eviction list.  The statute at issue in *Merrill* empowered the Indiana Gaming Commission to exclude or eject individuals who "call into question the honesty and integrity of the gambling operations." *Id*. at 731.  Moreover, the regulation, which did not go into effect until after Merrill's relapse occurred, required casinos to maintain an eviction list, including people who request to be excluded, and to prohibit entry to those on the list. *Id*. at 732.  With this in mind, the Seventh Circuit concluded that Trump's obligation to follow the statute and regulation "does not automatically translate into a duty of care owed to compulsive gamblers.  At most, the rules impose upon Trump a duty to the state through the gaming commission, not to a self-requesting evictee." *Id*.  Speedway claims that the rationale in *Merrill* applies here.

*Merrill*, however, is distinguishable from this case because the statute and regulation at issue in *Merrill* is broader than 65 IAC 5-2-7 and does not set forth a clear duty of care like 65 IAC 5-2-7.  Unlike the statute and regulation involved in *Merrill*, 65

IAC 5-2-7(b) explicitly states that the on-line retailer is acting on behalf of the player. This distinction is significant because it clearly sets forth a duty for the on-line retailer (Speedway) to act on behalf of the player (Mr. Andrews). In other words, 65 IAC 5-2-7(b) imposes upon Speedway a duty to Mr. Andrews, not to the state or the Lottery Commission.

As such, Speedway's Motion regarding Count III must be dismissed and Mr. Andrews' Cross Motion should be granted.

## 4. Negligence

Next, Speedway maintains that Mr. Andrews' negligence claim fails because:

> First, Speedway owed no common law duty to Andrews. Second, nothing in 65 I.A.C. 5-10-5 imposes a duty upon Speedway to sell Andrews a lottery ticket. But even if it did, 65 I.A.C. 5-10-5, like 65 I.A.C. 5-2-7, does not provide Andrews a private cause of action. And finally, to the extent that Andrews' negligence claim is based on Speedway's contract with the Lottery, the economic loss rule bars his claim.

Motion p. 17. The elements of a negligence claim are: "(1) a duty owed to plaintiff by the defendant, (2) breach of duty by allowing conduct to fall below the applicable standard of care, and (3) a compensable injury proximately caused by defendant's breach of duty." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1216-17 (Ind. 2000)).

### A. Common Law duty to Mr. Andrews

Speedway first maintains that it had no common law duty to sell Mr. Andrews a lottery ticket.[2] Mr. Andrews agrees with Speedway on this point. In fact, nowhere in Mr.

---

[2] In support of its argument, Speedway cites to case law for the proposition that "at common law, a proprietor of privately-owned property may exclude whomever it wishes for any reason, or for no reason whatsoever." Motion p. 18. Speedway, however, neglects to point out that recent Indiana case law has partially abrogated this common law right of exclusion with respect to gambling. *See Donovan v. Grand Victoria Casino & Resort, L.P.*, 915 N.E.2d 1001, 1006 (Ind. Ct. App. 2009) ("Indiana has implemented a

Andrews' Amended Complaint is a claim that Speedway had a common law duty to sell him a ticket. Rather, Speedway's duty to sell Mr. Andrews a lottery ticket arises out of 65 IAC 5-10-5, the breach of which is clear evidence of negligence. *See Vandenbosch v. Daily*, 785 N.E.2d 666, 670 (Ind. Ct. App. 2003)(stating that the unexcused or unjustified violation of an administrative regulation is evidence of negligence.).

### B. 65 IAC 5-10-5

Speedway next maintains that 65 IAC 5-10-5 does not impose a duty on Speedway to sell Mr. Andrews a lottery ticket because it "simply sets forth the manner in which Hoosier Lotto tickets can be purchased." Motion p. 23. This is simply not the case.

65 IAC 5-10-5 provides as follows:

(a) An on-line ticket for Hoosier Lotto may represent one (1) or more plays. An on-line ticket for Hoosier Lotto *shall* be purchased by any of the following methods:

(1) The player may submit a hand completed play slip identifying the selected payment option and one (1) or more plays to an authorized on-line retailer *who shall generate the on-line ticket.*

(2) The player may verbally advise an authorized on-line retailer of the selected payment option and one (1) or more plays, and the on-line retailer *shall generate the on-line ticket.*

(3) The player may request a quick pick with a specified payment option from an authorized on-line retailer *who shall generate an on-line ticket* with a random play or plays and the selected payment option.

(4) The player may, without specifying a payment option, request a quick pick from an authorized on-line retailer *who shall generate an on-line*

---

comprehensive scheme for regulating riverboat gambling and thus has partially abrogated the common law right of exclusion.), *trans. sought.* As indicated, transfer has been sought on this case but at the present time the Indiana Supreme Court has neither granted nor denied transfer. Counsel for Mr. Andrews is certainly aware that if transfer of a case is granted by the Indiana Supreme Court, the Court of Appeals' opinion or judgment is vacated and held for naught. *See* Ind. App. R. 58(A).

*ticket* with a random play or plays and the automatic annual payment option.

(5) The purchaser may purchase a ticket from a player-activated terminal.

65 IAC 5-10-5(a) (emphasis added). The language from the above-cited statute states the procedure for playing. In four of the five scenarios,[3] the statute clearly states that the on-line retailer "shall generate the on-line ticket." This statute sets forth a clear duty for the authorized on-line retailer to sell a lottery ticket to any player who submits a completed play slip. In other words, it *is not* discretionary or left to the on-line retailer to determine as Speedway suggests.[4]

Here, Mr. Andrews submitted a hand completed play slip identifying three plays and informing Speedway of the payment option in full accordance with 65 IAC 5-10-5(a). Thereafter, Speedway failed to generate an on-line ticket in clear breach of its duty to Mr. Andrews and the aforementioned statute.

Notwithstanding this, Speedway argues that "even assuming that the above section imposed a duty upon Speedway to sell Andrews a lottery ticket (which it does not), 65 I.A.C. 5-10-5(a) does not provide him a private cause of action." Motion p. 23. However, just as 65 IAC 5-2-7(b) imposes upon Speedway a duty to Mr. Andrews, not to the state or the Lottery Commission, so to does 65 IAC 5-10-5(a). *See* Section 3(C), *supra*.

---

[3] The fifth (5) procedure for playing involves the purchase of a ticket from a player-activated terminal thereby negating the necessity for the on-line retailer to provide the ticket.

[4] In construing a statute, a court's primary task is to give effect to the intent of the legislature. *Ashlin Transp. Servs. v. Indiana Unemployment Ins. Bd.*, 637 N.E.2d 162, 166 (Ind. Ct. App. 1994). Courts look to the plain, ordinary meaning of the words and phrases in a statute to ascertain the legislative intent. *Id.* "The 'plain, ordinary, and usual' meaning of words has been described as that found in everyday speech." *Id.* at 167. "In order to determine the everyday ordinary and usual meaning of words, courts may properly consult English language dictionaries." *Id.* The word "shall" is defined as "[h]as a duty to; . . . is required to." Black's Law Dictionary 1379 (7th ed. rev. 2001).

### C. The Economic Loss Doctrine Does Not Apply

Finally, Speedway argues that "[t]o the extent Andrews contends that Speedway owed him a duty based on Speedway's contract with the Lottery, his claim is barred by the economic loss rule." Motion p. 24. However, Mr. Andrews does not contend that Speedway's duties arise from the Contract. Rather, Mr. Andrews argues that Speedway's duties arise from the various statutes and regulations, which are independent of the Contract. In other words, the duty that Mr. Andrews claims he is owed derives from 65 IAC 5-2-7 and 65 IAC 5-10-5, not the Contract. Because these regulations are independent from the contract, the economic loss doctrine does not apply. *See Gunkel v. Renovations*, Inc., 822 N.E.2d 150, 153 (Ind. 2005) ("Because the façade was purchased in an arrangement 'independent' of the contract to build the rest of the house, the damage to the other parts of the house was damage to 'other property' and could be the basis for a tort claim.").

Because Mr. Andrews has met the elements required to set forth a negligence claim, Speedway's Motion regarding Count IV must be dismissed.

### 5. Intentional Interference with Prospective Business or Economic Advantage

Under Indiana law, in order to prevail on a claim for tortuous interference with prospective business or economic advantage (or interference with a business relationship), Plaintiff must establish: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *Reginald*, 388 F. Supp. 2d at 929-930 (citing *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App.

2000)). Additionally, "illegal conduct is an essential element of tortuous interference with a business relationship." *Id.* Moreover, "such an action involves the intervention of a third party and will not lie against a party to the contract." *Keith v. Mendus*, 661 N.E.2d 26, 36 (Ind. Ct. App. 1996) (citing *Martin v. Platt*, 179 Ind. App. 688, 386 N.E.2d 1026, 1027 (1979)).

Speedway does not challenge elements (1), (2), and (5) in its Motion. Rather, Speedway argues that Mr. Andrews' "claim for intentional interference with prospective business or economic advantage fails because (1) Andrews has not alleged sufficient facts to demonstrate that Speedway's actions were without justification and (2) Speedway's alleged interference with his attempt to purchase a lottery ticket was not illegal." Motion p. 24.

## A. Mr. Andrews has alleged sufficient facts to demonstrate that Speedway's actions were without justification.

Speedway first argues that Mr. Andrews has not asserted sufficient facts to demonstrate that its actions were without justification. Speedway's argument in this regard is without merit. Under Indiana law, the "absence of justification" element is met if the interferer "acted intentionally, without a legitimate business purpose, and the breach is malicious[5] and exclusively directed to the injury and damage of another." *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 2007 U.S. Dist. LEXIS 70697, at *20 (N.D. Ind. Sept. 20, 2007). Justifiability of conduct involves contemplation of the following factors:

---

[5] Although "[t]he word 'malicious' does appear in a few cases, . . . it is apparent that the 'malice' to which it refers, as in the cases that require proof of 'actual malice' in a defamation suit by a public figure, is intentionality rather than ill will." *Beanstalk Group v. Am. Gen. Corp.*, 283 F.3d 856, 863 (7th Cir. 2002).

> (a) the nature of the defendant's conduct; (b) the defendant's motive; (c) the interests of the plaintiff with which the defendant's conduct interferes; (d) the interests sought to be advanced by the defendant; (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff; (f) the proximity or remoteness of the defendant's conduct to the interference; and (g) the relations between the parties.

*Id.* at *20-21. "The overriding question is whether the defendant's conduct has been fair and reasonable under the circumstances." *Id.* at *21.

Here, Mr. Andrews pled numerous facts that clearly allege that Speedway's actions were intentional and without justification. Most notably, Mr. Andrews pled the following: that he entered Speedway during normal business hours and at a time when the lottery was open for play with the purpose of purchasing his weekly Hoosier Lotto ticket; that he filled out an authorized play slip by hand and approached the Speedway employee behind the counter who lied to him and refused to sell him a Lotto ticket in breach of 65 IAC 5-10-5, intentionally failed to act on behalf of him in entering information for producing the on-line ticket in breach of 65 IAC 5-2-7, intentionally failed to accept Plaintiff's play slip (which was properly and adequately marked), and intentionally failed to enter a play in a draw game into the Lottery's central computer system pursuant to Plaintiff's request; lied to Mr. Andrews by telling him that the Hoosier Lotto closed at 10:00 p.m. knowing "that citizens such as Plaintiff could purchase lottery tickets from 4:30 a.m. until 11:45 p.m., and 10:40 p.m. on Saturday nights with respect to Hoosier Lotto tickets," Am. Complaint ¶ 13; and intentionally failed to exercise the requisite control and supervision over its employees selling lottery tickets. *See* Am. Complaint p. 3, 8. These allegations sufficiently set forth that Speedway and/or its employees lied to Mr. Andrews and intentionally and unjustifiably

interfered with his ability to receive his ticket. In other words, Speedway's conduct was not fair or reasonable under the circumstances.

Moreover, Speedway *has not* set forth one legitimate business interest that it was pursuing by refusing to generate the on-line ticket for Mr. Andrews. Indeed, it can be fairly inferred that Speedway's employees refused to play Mr. Andrews' numbers out of personal animosity. They lied to him about the status of the machine, lied about their hours of operation, and ignored his direct and single request to engage in a business transaction. For what other reason would a place of business refuse to conduct its business with a customer?

### B. Speedway's actions were illegal independent of the Breach of Contract claim

Additionally, Speedway maintains that its alleged interference with Mr. Andrews' attempt to purchase a lottery ticket was not illegal. Specifically, Speedway argues that Mr. Andrews' claim fails because

> the alleged illegal conduct Andrews complains of is nothing more than Speedway's alleged breach of the Lottery Contract between it and the Hoosier Lottery. . . . [and] court's have held that a breach of contract claim, as a matter of law, cannot satisfy the illegality requirement of a claim for tortuous interference with a business relationship.

Motion p. 29. Speedway's argument in this regard fails because the alleged "illegal" conduct that Mr. Andrews complains of stems from Speedway's fraudulent activities and violation of 65 IAC 5-2-7 and 65 IAC 5-10-5, *not* from its breach of contract.

As noted above, in order for Mr. Andrews to prevail on his tortuous interference claim, Speedway must have acted illegally in its interference with Mr. Andrews' business relationship. Although the Seventh Circuit has rejected the implication that only a criminal act may be "illegal conduct," Indiana courts have not defined "illegality." *Lauer*

*v. Patriot Paint Co.,* 2007 U.S. Dist. LEXIS 51860 at *13-14 (7th Cir. July 17, 2007). Courts have, however, given some guidance about the types of conduct considered "illegal."[6]

Here, the illegal conduct Mr. Andrews complains of stems from Speedway's alleged misrepresentations to Plaintiff and other similar fraudulent activity, as well as its alleged breach of 65 IAC 5-2-7 and 65 IAC 5-10-5. These allegations are most closely aligned with the fraud alleged in *Reginald* and the statutory violation alleged in *Moffett*, both of which sufficed as "illegal" conduct sufficient to sustain a claim for tortuous interference with prospective business or economic advantage. *See Reginald*, 478 F. Supp. 2d at 1089 ("CMIC must have acted illegally-and fraud is sufficient illegal act- in its interference with Plaintiff's business relationships."); *Moffett*, 604 F. Supp. At 239 (court found that plaintiff "pleaded several illegal acts," including "violation of 42 U.S.C. § 1981 . . ."), *overruled on other grounds*, *Reeder-Baker v. Lincoln Nat'l Corp.*, 644 F. Supp. 983 (N.D. Ind. 1986).

Thus, because Mr. Andrews has satisfied all elements required to prove the tort of intentional interference with prospective business or economic advantage, Speedway's Motion regarding Count V must be dismissed.

---

[6] *See Reginald*, 478 F. Supp. 2d at 1089 ("CMIC must have acted illegally-and fraud is a sufficient illegal act-in its interference with Plaintiff's business relationships."); *Miles Distributors, Inc. v. Specialty Const. Brands Inc.*, 476 F.3d 442, 453 (7th Cir. 2007) (implying that Antitrust violation would supply illegal conduct); *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 641 (7th Cir. 1999) (citing *United States v. FKW Inc.*, 997 F. Supp. 1143, 1153 (S.D. Ind. 1998) (finding allegation of False Claims Act satisfied illegal conduct element); *Moffett v. Gene B. Glick Co., Inc.*, 604 F. Supp. 229, 239 (N.D. Ind. 1984) (court found that plaintiff "pleaded several illegal acts," including "violation of 42 U.S.C. § 1981, invasion of privacy, and infliction of emotional distress"), *overruled on other grounds*, *Reeder-Baker v. Lincoln Nat'l Corp.*, 644 F. Supp. 983 (N.D. Ind. 1986); *Gaskins v. Vencor, Inc.*, 2001 U.S. Dist. LEXIS 12785, 2001 WL 300517, at *26 (S.D. Ind. 2001) (sexual harassment, if proved, could supply requisite illegal conduct); *Assocs. Fin. Servs. Co. v. Bowman, Heintz, Boscia & Vician, P.C.*, 2001 U.S. Dist. LEXIS 7874, 2001 WL 619381, at *8 (S.D. Ind. 2001) (filing lawsuit for alleged improper reasons, as well as alleged intimidation and exertion of economic duress, could amount to illegal conduct); *but see*, *Levee v. Beeching*, 729 N.E.2d 215, 222-23 (Ind. Ct. App. 2000) (concluding that defamation does not constitute illegal conduct as contemplated by the tort.).

## V.  CONCLUSION

For all the reasons identified above, and those in Mr. Andrews' Cross-Motion,

Mr. Andrews respectfully requests that this Court deny Speedway's Motion in its entirety

and grant Mr. Andrews' Cross-Motion.


Respectfully submitted,

s/ Josh F. Brown
Josh F. Brown (Atty No. 26672-49)
Steven K. Huffer (Atty No. 8459-49)
S.K. Huffer & Associates, P.C.
12220 North Meridian Street, Suite 150
Carmel, Indiana 46032
317-564-4807/ Fax 317-564-4812

Robert Burkett (Attorney No. 3876-49)
LAW OFFICE OF ROBERT BURKETT
1111 East 54th Street, Suite 106
Indianapolis, IN   46220
317-253-1510

Scott A. Weathers (Attorney No. 11355-49)
THE WEATHERS LAW OFFICE, P.C.
333 North Pennsylvania Street
The American Building, Suite 200
Indianapolis, IN 46204-1838
317-822-8010 / Fax 317-822-8088

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Brief in Support of Cross Motion for Judgment on the Pleadings and in Response to Defendant Speedway SuperAmerica LLC's Motion for Judgment on the Pleadings* has been filed electronically, this 26th day of February, 2010. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Joseph G. Eaton
joe.eaton@btlaw.com
Barnes & Thornburg LLP

Matthew S. Winings
matthew.winings@btlaw.com
Barnes & Thornburg LLP


s/ Josh F. Brown