**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **CHARLES ANDREWS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 1:09-cv-1242-WTL-DML** |
| | ) | |
| **SPEEDWAY SUPERAMERICA LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**ENTRY ON CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS**</u>

Each party in this case has filed a motion for judgment on the pleadings.  Both motions are fully briefed and the Court, being duly advised, **GRANTS** the Defendant's motion and **DENIES** the Plaintiff's motion for the reasons set forth below.

### *Applicable Standard*

In reviewing a motion for judgment on the pleadings, the Court must apply the same standard that applies to a motion to dismiss under Rule 12(b)(6), and therefore must view the facts as set forth in the pleadings in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  In other words, the question is whether the moving party is entitled to judgment as a matter of law even assuming that all of the facts are as pled by the nonmoving party.

### *Allegations in the Amended Complaint*

Plaintiff Charles Andrews alleges the following facts in his amended complaint.

On Saturday, February 13, 2008, at approximately 10:30 p.m., Andrews entered an Indianapolis convenience store owned and operated by Defendant Speedway SuperAmerica LLC ("Speedway") with the purpose of purchasing his weekly Hoosier Lotto ticket.  Andrews had

filled out an authorized play slip by hand, using numbers from his birth date for the third set of numbers.  The Speedway employee behind the counter refused to sell Andrews a Hoosier Lotto ticket.  The employee first told Andrews that the lottery machine was broken, but after Andrews had him print a list of winning numbers from the previous night, thus demonstrating that the machine was not broken,  the employee told Andrews that the store manager did not permit employees to sell lottery tickets after 10 p.m.  Andrews then spoke to the manager of the store, who also refused to sell him a lottery ticket, even though it was prior to the 10:40 p.m. deadline for purchasing Hoosier Lotto tickets on Saturday nights.

At that point it was too late for Andrews to go to another store and purchase a ticket prior to 10:40 p.m.  Andrews left the play slip he had filled out with the manager and told him that he would return the next day.  When he did so, Andrews, the manager, and two other store employees checked the winning numbers and determined that the third set of numbers on the play slip matched the winning numbers from the previous night's Hoosier Lotto drawing.  In other words, if Andrews had been permitted to purchase a ticket using the play slip the previous night prior to 10:40 p.m., he would have won approximately $11,500,000.00.

### Plaintiff's Motion for Judgment on the Pleadings

Andrews' motion for judgment on the pleadings is easily disposed of given the applicable standard.  Andrews would be entitled to judgment on the pleadings only if he were entitled to judgment in his favor as a matter of law given the facts contained in the pleadings *read in the light most favorable to Speedway*.  Inasmuch as Speedway denies in its answer virtually every material fact alleged by Andrews, he is clearly not entitled to judgment on the pleadings.

### Defendant's Motion for Judgment on the Pleadings

2

Andrews asserts five counts in his amended complaint:  breach of contract; fraud; breach of fiduciary duty; negligence; and intentional interference with prospective business or economic advantage.  Speedway moves for judgment on the pleadings on all five counts.  Each count is addressed, in turn, below.

*Breach of Contract*

Speedway sells Hoosier Lotto tickets pursuant to a contract it entered into with the State Lottery Commission of Indiana ("Commission").  Andrews alleges that Speedway breached that contract by refusing to sell him a Hoosier Lotto ticket on the night in question.  The Court need not decide whether Speedway's actions as alleged by Andrews did, in fact, constitute a breach of the contract between it and the Commission, because even assuming that they did, Andrews may not maintain a breach of contract action against Speedway.

As a general rule, "'[t]he parties to a contract are the ones to complain of a breach, and if they are satisfied with the disposition which has been made of it and of all claims under it, a third party has no right to insist that it has been broken.'"  *Harold McComb & Son, Inc. v. JPMorgan Chase Bank, NA*, 892 N.E.2d 1255, 1258 (Ind. App. 2008) (quoting *Williams v. Eggleston*, 170 U.S. 304, 309 (1898)).  Under Indiana law, therefore, "only the parties to a contract, those in privity with the parties, and intended third-party beneficiaries under the contract may seek to enforce the contract."  *Id.* (citing *Gonzales v. Kil Nam Chun*, 465 N.E.2d 727, 729 (Ind. App. 1984)).  Andrews asserts that he is a third-party beneficiary of the contract between Speedway and the Commission and that he is therefore entitled to assert a claim for breach of contract against Speedway.

"One not a party to the contract may directly enforce the contract as a third party

3

beneficiary only if the contracting parties clearly intended to directly benefit him by imposing a duty in his favor.  The intent to benefit the third party is controlling and can be shown by specifically naming the third party or by other evidence." *Boyle v. City of Anderson*, 534 N.E.2d 1083, 1084-85 (Ind. 1989) (citations omitted).  Andrews clearly is not named as a third-party beneficiary in the contract between the Commission and Speedway.  Nonetheless, Andrews argues that "other evidence" demonstrates the he was an intended beneficiary.  Specifically, Andrews points to the fact that the contract incorporates by reference all applicable regulations, one of which, 65 Ind. Admin. Code 5-2-7(b), provides that a retailer acts "on behalf of the player" when it enters "information for producing the on-line tickets."  Andrews also points to two provisions of the contract itself, one that provides that the Commission may terminate the contract if Speedway commits "any fraud, deceit or misrepresentation to . . . any individual purchasing a lottery ticket from" it, and another that provides for termination of the contract if Speedway "knowingly fail[s] to enter a play in a draw game into the Lottery's central computer system pursuant to the request of a ticket purchaser."

    None of these provisions demonstrate that the Commission and Speedway intended to benefit Andrews, as a potential lottery player, when they entered into the contract.  Rather, all of these provisions are consistent with the expressly stated purpose of the statute that created the Hoosier Lottery:  "to establish lottery games in Indiana that are the best available and that enable the people of Indiana to benefit from significant additional money for capital improvements." Ind. Code 4-30-1-1.  In other words, the Hoosier Lottery exists for the purpose of raising money to benefit the citizens of Indiana.  All contracts relating to the Lottery, and all of the regulations promulgated to govern its operation, necessarily are designed to further that purpose, not to

4

benefit those who wish to purchase a lottery ticket.

The fact is that the Lottery cannot achieve the legislature's stated purpose for creating it unless lottery tickets are sold.  Any provision in the regulations and the contract that may encourage, or even obligate, Speedway and other retailers to sell lottery tickets to those who seek to purchase them is designed to further that purpose.  If retailers routinely failed to sell tickets or otherwise made it difficult for people to purchase lottery tickets, the popularity–and thus the profitability–of the Lottery likely would wane.  It is that result that the Commission seeks to avoid by the obligations it places upon retailers.   Although those obligations may have the incidental effect of benefitting those who somehow gain from purchasing lottery tickets in Indiana–either financially, by winning more than they expend, or psychically, by enjoying the gambling process–that is not the purpose of those contracts, and that incidental benefit does not make lottery players (or attempted lottery players like Andrews) third-party beneficiaries of the contracts.  *See OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1315 (Ind. 1996) ("It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.").   Accordingly, Andrews is not a third-party beneficiary of the contract between Speedway and the Commission and therefore he may not maintain a breach of contract suit against Speedway.[1]  Speedway's motion for judgment on the pleadings is **granted**

---

[1]The Court also agrees with Speedway that even if the contract were intended to benefit lottery players or potential lottery players, it would be for the benefit of that class of people as a whole, not Andrews in particular, and therefore Andrews still could not maintain a suit as a third-party beneficiary.  *See Ayres v. Indian Heights Volunteer Fire Dept.*, 493 N.E.2d 1229 (Ind. 1986) (no third-party beneficiary suit by residents permitted when contract "was for the

as to Count I of Andrews' amended complaint. *Fraud*

       In Count II of his amended complaint, which is entitled fraud, Andrews alleges the

following:

> On or before February 13, 2008, Defendant Speedway misrepresented to Plaintiff
> that citizens such as Plaintiff could purchase lottery tickets from 4:30 a.m. until
> 11:45 p.m., and 10:40 p.m. on Saturday nights with respect to Hoosier Lotto
> tickets.  Further, Defendant Speedway misrepresented to Plaintiff that the Lottery
> machine was not working that night and that they were not allowed to sell tickets
> after 10:00 p.m.  Defendant Speedway made all these representations knowing
> them to be false or with reckless ignorance of the falseness of same.
>
> Plaintiff relied on Speedway's misrepresentations, and he left the store that
> evening without being allowed to purchase a lottery ticket, handing the Plaintiff's
> handwritten play slip for same having the winning numbers on it to Defendant's
> Manager, and without time to drive to another retail store to purchase a ticket that
> night.

Amended Complaint ¶¶ 13-14.

       Speedway argues that this claim must be dismissed because it is "nothing more than a

repackaged version of [Andrews'] breach of contract claim."  Speedway Brief at 12.  While

Speedway is correct that under Indiana law a fraud claim cannot be premised on the breach of a

contract, *see Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004), it ignores the fact that a

plaintiff may plead alternative claims.  As discussed above, Andrews' breach of contract claim

fails because there is no contract that he may enforce.  Because he has no breach of contract

claim, his fraud claim cannot be duplicative of that claim.  The fact that he made an unsuccessful

attempt to bring a breach of contract claim does not preclude him from asserting a fraud claim

based upon the same conduct.

---

benefit of the residents of Taylor Township as a whole . . . [and t]he obligation was not
particularized as to any single resident of the township").

That said, there is another fundamental, and fatal, flaw with Andrews' fraud claim.

Under Indiana law, to prove an actual fraud claim, a plaintiff must demonstrate: (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of. Actual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed.

*Doe v. Howe Military School*, 227 F.3d 981, 990 (7th Cir. 2000) (citations and internal quotation marks omitted). With regard to any statement by Speedway prior to the night of February 13, 2008, that "citizens such as Plaintiff could purchase lottery tickets from 4:30 a.m. until 11:45 p.m., and 10:40 p.m. on Saturday nights with respect to Hoosier Lotto tickets," such a statement would be a "representation regarding future conduct" which could not constitute fraud. Further, there is no suggestion that at the time any such statement was made it was made with the intent to deceive Andrews (or anyone else). To the extent that Speedway made such a statement to Andrews that night–presumably by displaying a sign indicating the relevant cut-off times for purchasing lottery tickets–Andrews did not rely upon that "statement" to his detriment; and, again, there is no suggestion that Speedway posted the lottery cut-off times with the intent to deceive anyone. Finally, with regard to the statements that the machine was broken and that the manager did not permit the sale of lottery tickets after 10:00 p.m., it is clear that Andrews did not rely on those statements to his detriment. Indeed, rather than rely on the clerk's representations, he alleges that he "had the clerk print a list of winning numbers from the previous night to prove the machine was not broken" and then "called the manager over to the counter." In other words, Andrews does not allege that the clerk's *statements* caused Andrews to miss out on purchasing a lottery ticket, but rather that the clerk's and the manager's refusal to sell him a ticket did.

Accordingly, the facts as pled by Andrews do not support a claim for fraud, and Speedway is entitled to judgment on the pleadings with regard to Count II.

*Breach of Fiduciary Duty*

In Count III of his amended complaint, Andrews alleges that Speedway owed him a fiduciary duty and that it breached that duty when it refused to allow him to purchase a lottery ticket.  Under Indiana law, a business relationship does not give rise to a fiduciary duty.  Rather, there must be a "special circumstances" which create a "relationship of trust and confidence." *Wilson v. Lincoln Fed'l Savings Bank*, 790 N.E.2d 1042, 1046-47 (Ind. Ct. App. 2003). Andrews argues that such a relationship existed in this case because 65 I.A.C. 5-2-7(b) created an agency relationship between him and Speedway by providing that "[p]urchase of on-line tickets is made at the player's own risk through the on-line retailer who is acting on behalf of the player in entering information for producing the on-line tickets."  As Andrews acknowledges, however,

> To establish an agency relationship three elements must be shown: (1) a manifestation of consent by the principal to the agent, (2) an acceptance of the authority by the agent, and (3) control exerted by the principal over the agent.

*Johnson v. Blankenship*, 679 N.E.2d 505, 507 (Ind. Ct. App. 1997).  None of these facts exist in this case, inasmuch as Speedway did not undertake the obligation of "entering information for producing the on-line tickets" sought by Andrews and therefore did not act "on behalf of" Andrews in any way.  Andrews has simply not demonstrated the existence of an agency relationship between him and Speedway or any other basis upon which a fiduciary duty existed. Therefore, Speedway is entitled to judgment on the pleadings with regard to Count III, and Speedway's motion is **granted** as to that count.

8

*Negligence*

Andrews next asserts a claim for negligence.  As Andrews acknowledges, "[t]he elements of a negligence claim under Indiana law are:  '(1) a duty owed to plaintiff by defendant, (2) breach of duty by allowing conduct to fall below the applicable standard of care, and (3) a compensable injury proximately caused by defendant's breach of duty.'"  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1216-17 (Ind.2000)).  Andrews alleges that Speedway had a duty to sell him a lottery ticket and failed to do so.  While Andrews concedes that Speedway had no common law duty to sell him a lottery ticket, he argues that a duty was created by 65 I.A.C. 5-10-5, which provides, in relevant part:

> (a) An on-line ticket for Hoosier Lotto may represent one (1) or more plays. An on-line ticket for Hoosier Lotto shall be purchased by any of the following methods:
>
> > (1) The player may submit a hand completed play slip identifying the selected payment option and one (1) or more plays to an authorized on-line retailer who shall generate the on-line ticket.
> >
> > (2) The player may verbally advise an authorized on-line retailer of the selected payment option and one (1) or more plays, and the on-line retailer shall generate the on-line ticket.
> >
> > (3) The player may request a quick pick with a specified payment option from an authorized on-line retailer who shall generate an on-line ticket with a random play or plays and the selected payment option.
> >
> > (4) The player may, without specifying a payment option, request a quick pick from an authorized on-line retailer who shall generate an on-line ticket with a random play or plays and the automatic annual payment option.

Under Indiana law, "the unexcused or unjustified violation of a duty prescribed by statute or ordinance constitutes negligence per se if the statute is intended to protect the class of persons

9

in which plaintiff is included and against the risk of the type of harm which has occurred as a result of its violation." *Hodge v. Nor-Cen, Inc.*, 527 N.E.2d 1157, 1160 (Ind. Ct. App. 1988) (*cited with approval in Vandenbosch v. Daily*, 785 N.E.2d 666, 669 (Ind. Ct. App. 2003)). However, "'[t]he same is not true of an administrative regulation, the violation of which has been held to be only evidence of negligence.'" *Vandenbosch*, 785 N.E.2d at 670 (quoting *Hodge*, 527 N.E.2d at 1160 n.3). Therefore, in both *Vandenbosch* and *Hodge* the court determined that the plaintiffs' "'claim of negligence could not survive a motion for summary judgment if the duty element of their claim rested solely upon the existence of an applicable administrative regulation.'" *Vandenbosch*, 785 N.E.2d at 670 (quoting *Hodge*, 527 N.E.2d at 1160 n. 3). Accordingly, in *Vandenbosch* the court found as a matter of law that a landlord's violation of a provision of the Indiana Administrative Code was not a proper basis for imposing liability on the landlord.

In this case, Andrews points to no basis for the duty element of his negligence claim other than Speedway's alleged violation of 65 I.A.C. 5-10-5. Under Indiana law, that violation is not sufficient to create a duty, and therefore Speedway is entitled to judgment as a matter of law on Andrews' negligence claim. Speedway's motion for judgment on the pleadings is **granted** as to Count IV.

*Intentional Interference with Prospective Business or Economic Advantage*

Andrews' final claim is for intentional interference with prospective business or economic advantage. As Andrews recognizes, "[t]he elements of that tort are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and

10

(5) damages resulting from defendant's wrongful interference with the relationship." *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000).  In addition, as Andrews also acknowledges, "illegal conduct is an essential element" of the tort in Indiana.  Speedway argues that Andrews has failed to plead any illegal conduct on its behalf.  The Court agrees.

Andrews argues that "Speedway's fraudulent activities" satisfies the "illegal conduct" requirement.  As discussed above, however, Andrews has failed to plead any fraudulent conduct by Speedway.  Andrews also points to Speedway's alleged violation of 65 I.A.C. 5-2-7 and 65 I.A.C. 5-10-5.  However, in light of the fact that under Indiana law the violation of an administrative regulation may not form the basis of a negligence claim, the Court feels confident in holding that, as a matter of law, the violation of an administrative regulation also does not satisfy the "illegal conduct" requirement for the tort of interference with prospective business or economic advantage.  Accordingly, Speedway's motion for judgment on the pleadings is **granted** with regard to Count V as well.

*Conclusion*

For the reasons set forth above, the Plaintiff's motion for judgment on the pleadings is **DENIED** and the Defendants' motion for judgment on the pleadings is **GRANTED** in its entirety.

SO ORDERED:  07/27/2010

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Joshua F. Brown
S.K. HUFFER & ASSOCIATES, P.C.
joshb@hufferlaw.com

Robert E. Burkett Jr
LAW OFFICE OF ROBERT BURKETT
bobburkettlaw@gmail.com

Joseph Gregory Eaton
BARNES & THORNBURG LLP
joe.eaton@btlaw.com

Steven Kenneth Huffer
S.K. HUFFER & ASSOCIATES, P.C.
steveh@hufferlaw.com

Scott A. Weathers
THE WEATHERS LAW OFFICE
scott@sawlaw.net

Matthew S. Winings
BARNES & THORNBURG
mwinings@btlaw.com